THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
IN SEATTLE

STEVEN J. BELL,

                          Plaintiff,

        v.

ONEWEST BANK, F.S.B.; AURORA LOAN
SERVICES, LLC; DEUTSCHE BANK
NATIONAL TRUST COMPANY; TWIN
CAPITAL MORTGAGE, INC.; REGIONAL
TRUSTEE SERVICES CORPORATION,

                          Defendants.

Case No. 09-CV-00150-RSL

PLAINTIFF STEVEN J. BELL'S
AMENDED COMPLAINT
SUBSTITUTING AURORA LOAN
SERVICES, LLC AND ONE WEST
BANK, F.S.B. AS DEFENDANTS IN
THE PLACE AND STEAD OF THE
FEDERAL DEPOSIT INSURANCE
CORPORATION AND ADDING
DEUTSCHE BANK NATIONAL
TRUST COMPANY

## I. **PARTIES**

1.1    Plaintiff, Steven J. Bell, who is a resident of King County, Washington, and

pleads the following allegations, states that those allegations are true of his own knowledge,

except as to matters stated on information and belief, and as to those matters, he believes them

to be true.  Plaintiff re-alleges and incorporates by reference the allegations set forth in original

Complaint.

1.2    Defendant Aurora Loan Services, LLC ("Aurora") is a limited liability company

that is a Delaware corporation which is registered with the Washington's Secretary of State.

Discovery is necessary to determine the extent of Aurora's participation in the fraudulent

activities that affected Plaintiff in regards to his mortgage loan.  Plaintiff amends his complaint

AMENDED COMPLAINT - 1

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

to include Aurora based on assertions from counsel for former Defendant, FDIC, Doug Davies.

1.3     Defendant Twin Capital Mortgage, Inc. ("Twin Capital") is a California corporation that is registered with the Washington Secretary of State as a foreign corporation and conducts business in the State of Washington by providing Washington state residents with residential mortgage brokering services.

1.4     Defendant OneWest Bank, F.S.B. ("One West") is a federal savings bank which operates as a loan servicing agent for itself and for other owners of mortgage loans secured by real property located in the State of Washington and in other states.  Plaintiff has been advised by the attorney for other defendants in this case that Defendant OneWest is the current servicer of Ms. Bain's mortgage loan in the place and stead of the former defendants IndyMac Bank and the FDIC.

1.5     Defendant Regional Trustee Service Corporation ("Regional Trustee") is a Washington corporation which conducts business in the State of Washington by acting as a trustee for beneficiaries under Deeds of Trust recorded in the records of counties in the State of Washington.  Defendant Regional Trustee has represented that it had the authority to conduct a foreclosure sale on behalf of former Defendants IndyMac and MERS and to transfer title to Mr. Bell's home based upon terms in the Deed of Trust.

1.6     Defendant Deutsche Bank National Trust Company ("Deutsche") is an unknown type company which has represented in other court pleadings that it is a California corporation. However, there is no record of this company with the California Secretary of State and there is no record of this business entity registered with the Washington Secretary of State.  Further, there is no record of this company as having registered with the Washington Department of Licensing.  Nevertheless, Defendant Deutsche does business in the State of Washington by

AMENDED COMPLAINT - 2

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

acting as the trustee or servicer for a mortgage-backed securities trust which is constituted of mortgage loans which are secured by interests in real property located in the State of Washington.  Plaintiff has been advised by counsel for previous defendants in this case that Defendant Deutsche is the servicer of the mortgage-backed securities trust that presently owns Mr. Bell's mortgage loan, in the place and stead of former Defendants IndyMac Bank and the FDIC.

1.7     At all times mentioned herein, the Defendants, and each of them, were the agents, servants, representatives and/or employees of each of the remaining Defendants and were acting within the course and scope of such agency or employment.  The exact terms and conditions of the agency, representation or employment relationships are presently unknown to Plaintiff, but when the information is ascertained, leave of court will be sought to insert the appropriate allegations.

## II. <u>FACTUAL ALLEGATIONS</u>

2.1     Plaintiff re-alleges and incorporates by reference the allegations set forth in Section I above.

2.2     Plaintiff Steve Bell works as a music teacher teaching guitar and he has owned his home in Federal Way for four-and-half years.  Mr. Bell had a first and second mortgage on the property which he obtained in 2004.  Mr. Bell was interested in reducing his interest rate on the loans and therefore sought information regarding obtaining a new loan.  Defendant Twin Capital sent Mr. Bell a mail solicitation and he responded by calling.  All communications with Defendant Twin Capital were handled by telephone.  He decided to make application with Defendant Twin Capital because they quoted him a much lower rate.  The representative of Defendant Twin Capital told Mr. Bell that they had a "special" loan product that no one else

AMENDED COMPLAINT - 3

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

could offer because it had "Chinese investors" who were willing to lend at lower rates.  Mr. Bell communicated with an individual named Jerome at Defendant Twin Capital, and he was told that the simple interest rate was 2.15% and that it would end up being 2.9% APR after the costs were built into the loan.  Mr. Bell advised Jerome that he had never heard about an interest rate being that low and questioned the "special" program, he was reassured of its legitimacy by Jerome, who kept talking about the Chinese investors.  Jerome said that the investors were not making any money from interest in China and so were willing to lend at significantly reduced rates in the U.S. because it was still better than the rates they were getting in China.

2.3     Mr. Bell is uncertain of exactly when he made application for the new loan to Defendant Twin Capital, but he received a Good Faith Estimate ("GFE") from that entity for each of the two proposed loans which he signed on June 20, 2006.  The GFE for the first mortgage loan indicates that Defendant Twin Capital will be paid $2,819.00 for broker compensation, $765.00 as an administration fee, $499.00 as a "loan doc set-up fee" and $189.00 as a courier fee.  Mr. Bell contends that the various fees added to his loan costs by Defendant Twin Capital are nothing more than junk fees added to the loan costs in order to increase the profits of Defendant Twin Capital, and that there were no additional services rendered to Mr. Bell which supported the charging of those fees.  In addition, Defendant Twin Capital did not incur separate "courier fees" for providing services to Mr. Bell and therefore this fee is another unjustified junk fee.  The GFE did NOT indicate whether the new lender was proposing to charge Mr. Bell a prepayment penalty and the proposed interest rate is listed as **2.15%** for a period of 40 years on an initial variable rate.  Mr. Bell now knows that this information was absolutely untruthful as his loan did not carry an interest rate of 2.15%.  The

AMENDED COMPLAINT - 4

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

GFE did not indicate that Defendant Twin Capital was going to be paid a Yield Spread Premium in return for placing Mr. Bell into a loan which carried a higher interest rate than the rate for which Mr. Bell qualified.  This fee paid by former defendant IndyMac to Defendant Twin Capital was **$11,880.00** in addition to the broker fee of **$2,819.00**, administrative fee of **$765.00,** underwriting fee of **$895.00,** and processing fee of **$875.00** paid directly by Mr. Bell from the first mortgage loan proceeds.  Former defendant IndyMac also charged Mr. Bell a **$700.00** funding fee.  Defendant Twin Capital also charged **$345.00** for an application fee, **$247.50** as an origination fee and **$495.00** as a broker fee on the second mortgage loan.

2.4     The GFE for the second mortgage loan indicated that Defendant Twin Capital was going to receive $675.00 as a processing fee, $299.00 for "doc prep" and $565.00 as a "admin" charge.  Mr. Bell maintains that these fees were also just junk fees added to this loan to increase the profit for Defendant Twin Capital and they were not charged because of actual services provided to him by Defendant Twin Capital.  This GFE indicates that the second mortgage loan would have an interest rate of **4.99%** on a variable rate for 30 years with no balloon payment.  There is no information about whether there would be a prepayment penalty on this loan either.  Mr. Bell signed this GFE also on June 20, 2006.  Mr. Bell did NOT receive separate GFEs and other disclosures required by the Truth in Lending Act ("TILA") from former defendant IndyMac.  Further, because he was persuaded by Defendant Twin Capital that this loan was at such a low interest rate Mr. Bell was induced to enter into these loans, and as a result, paid a pre-payment penalty to his previous mortgage lender of **$8,972.40.**

2.5     Mr. Bell was thereafter advised that a freelance notary would come to his home so that he could sign the loan documents in early July 2006.  Mr. Bell never asked for the notary to come to him and he had expected to go to an escrow office in order to conduct the

AMENDED COMPLAINT - 5

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

signing of the loan documents just as he had done in the past with other loans.  The closing on this mortgage loan was not handled by an escrow company in Washington state.  Rather, it was handled by an office of First American Title Company located in Hillsboro, Oregon. (Defendant Twin Capital is in California and of course, Mr. Bell is located in Washington.) Mr. Bell maintains that this choice of escrow agent, former Defendant First American, by Defendant Twin Capital and the decision to send a freelance notary to handle the signing, was nothing more than an effort to make certain that he did not receive accurate information about the loan terms before he signed.

2.6     The freelance notary contacted Mr. Bell to arrange for a signing by calling on the cell phone.  The signing took place at Mr. Bell's home.  Mr. Bell did sign the loan documents which were presented to him, but he is uncertain as to what the terms were of the documents he signed because he was not provided with a complete set of documents by the notary once he was done signing.  During the signing process, he did note that it appeared the interest rate was different than was represented to him by Jerome.  Mr. Bell called Jerome during the signing process in order to ask about the interest rate, but he was again assured by Jerome that the rate really was 2.15%.  Jerome said that the interest rate on the loan documents looked like it was higher because it included all of the closing costs in the calculation of the first year's rate.  Based upon Jerome's repeated assurances, Mr. Bell continued signing the loan documents.  After the signing, the notary left copies of his/her instructions from the escrow company regarding the second mortgage loan, but he/she did not leave Mr. Bell with numerous loan documents.  He did not receive the TILA Disclosure forms for either loan until after the signing took place.  Mr. Bell did not even receive Estimated HUD-1 Settlement Statements for the loans from the notary.

AMENDED COMPLAINT - 6

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

2.7     Mr. Bell eventually received a final HUD-1 Settlement Statement and the TILA Disclosure documents from former Defendant First American well after the signing.  However, he does not know the interest rates that he is paying on the loans.  Mr. Bell did receive two copies for each loan of the Notice of Right to Cancel ("NRC") and he signed those documents.  However, the documents are not correctly completed.  All four of the NRC documents signed by Mr. Bell were dated and date calculated based upon the premise that he signed the loan documents on July 3, 2006.  Mr. Bell did not sign the loan documents on July 3, 2006.  Rather, he signed the loan documents on July 5, 2006 and therefore the calculations made for the date of rescission (July 7, 2006) is completely incorrect, thereby rendering the notices invalid.  Mr. Bell received both of his loans from former Defendant IndyMac. Further, former Defendant First American charged Mr. Bell largely inflated fees for the services it purported to provide in connection with the first mortgage loan, including excess recording fees (listed as **$70.00**), an "email doc fee" of **$25.00,** "post closing fee" of **$240.00**, and a messenger/courier fee of **$150.00**.   Former Defendant First American also received another **$232.00** in fees related to the second mortgage loan.  Mr. Bell was required to also pay **$325.00** for the traveling notary services in addition to the fees charged by former Defendant First American.

2.8     In spite of the fact that Mr. Bell did not really know what the terms of his loans were after signing, he received monthly payment statements and he made those payments in 2006 and 2007.  However, he fell behind in his payments during 2008 because he lost his job and by this time, his monthly payments had more than doubled.  It appears from Mr. Bell's monthly statements that his loan was an adjustable rate, option loan, which caused the significant increase in his payments after loan inception.  He was attempting to sell his house because it was clear that he could not make the required mortgage payments under the existing

AMENDED COMPLAINT - 7

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

loan terms, but was unsuccessful.  Mr. Bell received a Notice of Default from Defendant Regional Trustee in late August 2008 regarding the first mortgage loan.  Mr. Bell was unable to cure the alleged default and thereafter received a Notice of Trustee's Sale ("NOTS") document served upon him at his residence and by the mails.  The NOTS indicates that Defendant Regional Trustee is foreclosing under the Deed of Trust on the first mortgage loan on behalf of the beneficiary.

2.9     Even though the loan was actually made by former Defendant IndyMac, it apparently is taking the position that former Defendant MERS was the original beneficiary, which is a completely false assertion.  Former Defendant MERS never had any beneficial interest in Mr. Bell's loan.  Nevertheless, a person named Scott Walter signed an Assignment of Deed of Trust document as an alleged Vice President of former Defendant MERS "as nominee for its successors and assigns".  Mr. Walter signed the document in Dakota County, Minnesota, even though neither former Defendant MERS nor former Defendant IndyMac is located or has offices in Minnesota.  In fact, the document itself indicates that once it is recorded, it is to be returned to former Defendant IndyMac in Austin, Texas.  This Assignment asserts that former Defendant MERS is assigning Mr. Bell's loan to former Defendant IndyMac.  Further, the Assignment was allegedly signed on August 29, 2008.  The Assignment was recorded in the records of King County, Washington on September 9, 2008 at 13:51 under Document Number 20080909001161.  In spite of the fact that the purported Assignment did not occur until at least **August 29, 2008**, a Bethany Hood, an alleged Assistant Secretary of former Defendant IndyMac signed an Appointment of Successor Trustee document on **August 22, 2008,** also in Dakota County, Minnesota, purporting to appointment Defendant Regional Trustee as the trustee under the Deed of Trust.  Next to Ms. Hood's signature dated August 22,

AMENDED COMPLAINT - 8

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

2008, there is a handwritten notation that the Appointment is "effective 8/29/08"; however, the Appointment document was not recorded until September 9, 2008 at 13:51 under Document Number 20080909001162 – the next recording number after the Assignment.  Therefore, former Defendant IndyMac "pre-signed" the Appointment document before it allegedly acquired its interest in the Deed of Trust.  In addition, Mr. Bell asserts, based upon information and belief, that Mr. Walter is not a Vice President of former Defendant MERS and Ms. Hood is not an Assistant Secretary of former Defendant IndyMac.  In fact, Mr. Walters and Ms. Hood are not employees of either company but rather are employees of former Defendant Fidelity National Title who are actively participating in fraudulently executing documents in connection with this foreclosure sale by making false representations regarding their authority and employment capacity.  Since it is unclear as to whether anyone had the authority to appoint Defendant Regional Trustee as the foreclosing trustee, there is a question about whether it had the authority to sign the NOTS and note the foreclosure sale.

2.10    Moreover, there remains a significant question as to the identity of the actual Note holder at the time that the foreclosure was initiated.  Plaintiff has named Defendants Deutsche and One West in this case based upon representations from counsel for the FDIC that Defendant Deutsche Bank is the trustee and/or custodian for the mortgage backed securities trust that owns Mr. Bell's loan, and that Defendant One West is the servicer, having acquired these rights and interests from the IndyMac predecessors.  At this time, Mr. Bell does not know when these entities acquired these rights and interests and thus he cannot even determine if any of the IndyMac entities or these new defendants were the holder of his Promissory Note at the time that the foreclosure sale was initiated.  Since Washington law (the Deed of Trust Act) requires that only the holder of the Note may initiate a foreclosure utilizing its provision, it is

AMENDED COMPLAINT - 9

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

imperative that Mr. Bell obtain this information so that he may ascertain if there are other legal challenges to the foreclosure sale which was initiated.  Further, Defendants Deutsche Bank and/or One West and/or Aurora Loan Services, LLC may be liable for the actions of predecessor defendants, depending upon the terms and conditions of their agreements with any of those entities.

2.11    For all of these reasons, Mr. Bell maintains that the foreclosure sale scheduled to take place on December 26, 2008 should be temporarily restrained and eventually enjoined until such time as this court makes a determination as to the propriety or impropriety of the foreclosure sale process.

### III.  CAUSES OF ACTION

First Cause of Action
For Temporary Restraining Order and Preliminary Injunction
As Against Defendants Regional Trustee, Aurora Loan Services, LLC, and Deutsche Bank

3.1    Plaintiff incorporates herein by reference as though fully set forth at length each and every allegation and statement contained in Paragraphs 1 through 2.11, inclusive, of the Factual Allegations.

3.2    By way of the filing of a separate motion, Plaintiff will move for issuance of a temporary restraining order and a preliminary injunction in order to stop the foreclosure sale.

3.3    In order to obtain an injunction, a plaintiff must show that: (1) he has a clear legal or equitable right; (2) that he has a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to him. *Kucera v. State, Dept. of Transportation*, 140 Wn.2d 200, 209, 995 P.2d 63 (2000).  Such criteria is evaluated by balancing the relative interests of the parties, and if appropriate, the interests of the public.  *Id.*  Ultimately, the decision to grant a preliminary

AMENDED COMPLAINT - 10

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1   injunction is within the sound discretion of the trial court, with such discretion to be exercised

2   according to the circumstances of each particular case.  *Washington Fed'n of State Employees*

3   *v. State*, 99 Wn.2d 878, 887 (1983) (citations omitted).

4        3.4     In addition, under the DTA, a borrower must seek to obtain an order restraining

5   the sale or risk the possibility of waiving all claims against the foreclosing entities and/or in

6   relation to the making of the loan.

7

8                          Second Cause of Action
                       Infliction of Emotional Distress
9                           as Against All Defendants

10       3.5     Plaintiff incorporates herein by reference, as though fully set forth at length,

11  each and every allegation and statement contained in Paragraphs 1 through 2.11, inclusive, of

12  the Factual Allegations above, and Paragraphs 3.1 through 3.4, inclusive, of the Causes of

13  Action above.

14       3.6     By their conduct described in this Complaint, all of the Defendants have

15  committed the tort of intentional infliction of emotional distress.

16                          Third Cause of Action
                   Breach of Fiduciary or Quasi-Fiduciary Duty
17  as Against Defendants Deutsche Bank and/or One West, Aurora Loan Services, LLC, and
                              Regional Trustee

18       3.7     Plaintiff incorporates herein by reference as though fully set forth at length each

19  and every allegation and statement contained in Paragraphs 1 through 2.11, inclusive, of the

20  Factual Allegations, and Paragraphs 3.1 through 3.6, inclusive, of Causes of Action above.

21       3.8     Defendants Aurora Loan Services, Deutsche Bank and/or One West, and

22  Regional Trustee owed a fiduciary duty or quasi-fiduciary duty to Plaintiff, including but not

23  limited to, acting in Plaintiff's best interests, and providing him with fair and honest disclosure

AMENDED COMPLAINT - 11

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

of all facts that might be presumed to influence him in regard to his actions, including those facts favorable to a creditor and adverse to Plaintiff's interest as it relates to the mortgage loan described herein.

3.9    Defendant Regional Trustee has a fiduciary duty as an alleged trustee under the DTA and it has violated its duties under the DTA by failing to conduct its business as required under the DTA and by falsely representing that it is the trustee under Mr. Bell's Deed of Trust when it has never been properly appointed as such.

Fourth Cause of Action
Violations of the Consumer Protection Act
as Against All Defendants

3.10    Plaintiff incorporates herein by reference, as though fully set forth at length, each and every allegation and statement contained in Paragraphs 1 through 2.11, inclusive, of the Factual Allegations above, and Paragraphs 3.1 through 3.9, inclusive, of the Causes of Action above.

3.11    The conduct of the Defendants constitutes unfair and deceptive business practices in violation of RCW 19.86 *et seq.*, it occurred in trade or commerce, has the potential for repetition, and impacts the public interest, all in violation of the Consumer Protection Act in connection with the foreclosure proceeding that was scheduled to be completed on December 26, 2008, as more particularly described above, entitling Plaintiff to damages, treble damages and reasonable attorney fees and costs pursuant to the statute.

3.12    In particular, Defendants Aurora Loan Services, LLC, Deutsche Bank and/or One West have violated the CPA in the following manner:

a.    They have caused a foreclosure to be initiated in an attempt to take possession and ownership of Ms. Bain's home, when one or all of them were not the holder of Ms. Bain's

AMENDED COMPLAINT - 12

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1   Promissory Note.

2       b.     They have assisted in the preparation and creation of false and misleading

3   documentation which has been recorded in the records of King County, Washington, as well as

4   in other counties in this state, regarding the standing of themselves or others to initiate and

5   maintain a foreclosure sale.

6       3.13    In particular, Defendant Regional Trustee has violated the CPA in the following

7   manner:

8       a.     It has made false representations regarding its role as trustee in connection with

9   foreclosure actions undertaken under the Washington Deed of Trust Act.

10       b.     It has engaged in a pattern of making false representations about its role in

11   connection with foreclosures in the State of Washington.

12       3.14    Plaintiff maintains that the actions of these Defendants are impacted and are

13   likely to impact in the future herself and other consumers in the State of Washington.

14       3.15    Plaintiff maintains that he has been damaged by the initiation of a foreclosure by

15   an entity who was not the holder of her Promissory Note in that he has been unable to negotiate

16   a resolution regarding the default on his loan because he has not known the identity of the Note

17   holder.  Further, the Deed of Trust Act language and subsequent case law makes clear that the

18   Washington Legislature intended that parties utilizing its provisions act in strict compliance

19   with its terms.  Plaintiff intends this action to constitute a private attorney general action

20   brought under the Consumer Protection Act in order to compel strict compliance with the

21   requirements of the Deed of Trust Act by these Defendants so that other Washington

22   consumers will not face the prospect of a foreclosure brought by an entity and on behalf of an

23   entity without the legal right to initiate such a proceeding under Washington law.

AMENDED COMPLAINT - 13

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

3.16    Plaintiff is entitled to treble damages for intentional violations of the Consumer

Protection Act, plus attorney fees and costs.

Fifth Cause of Action
Violations of the Consumer Protection Act
Based Upon Violations of the Mortgage Broker Practices Act
As Against Defendant Twin Capital

3.17    Plaintiff incorporates herein by reference, as though fully set forth at length,

each and every allegation and statement contained in Paragraphs 1 through 2.11, inclusive, of

the Factual Allegations above, and Paragraphs 3.1 through 3.16 inclusive, of the Causes of

Action above.

3.18    Defendant Twin Capital is required to comply with all of the requirements of the

Mortgage Broker Practices Act, RCW 19.146 *et seq.*  When brokering Mr. Bell's loan,

Defendant Twin Capital did not comply with the following requirements of RCW 19.146.0201

(the specific acts or inactions by this Defendant is more particularly described above in the

Factual Allegations portions of the Complaint): Defendant Twin Capital employed a scheme or

artifice to defraud or mislead Plaintiff; Defendant Twin Capital engaged in unfair and deceptive

practices toward Plaintiff; Defendant Twin Capital obtained property by fraud or

misrepresentation; Defendant Twin Capital failed to make disclosures to Plaintiff as required

by RCW 19.146.030 and any other applicable state or federal law; Defendant Twin Capital

failed to comply with numerous requirements of the TILA, 15 U.S.C. § 1601, *et seq.* and/or the

Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*; and Defendant Twin Capital

collected and charged a fee prohibited by RCW 19.146.030.  Defendant Twin Capital is liable

for these violations of the Mortgage Broker Practices Act as they constitute *per se* violations of

the Consumer Protection Act.

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

1

2

<u>Sixth Cause of Action</u>
<u>Violations of the Truth in Lending Act</u>
<u>Against Defendants Aurora Loan Services, LLC, Deutsche Bank and/or One West</u>

3

4

        3.19     Plaintiff incorporates herein by reference, as though fully set forth at length,

5

each and every allegation and statement contained in Paragraphs 1 through 2.11, inclusive, of

6

7

the Factual Allegations above, and Paragraphs 3.1 through 3.18 inclusive, of the Causes of

Action above.

8

        3.20     Defendants Aurora, Deutsche Bank and/or One West did not provide Plaintiff

9

10

with a Good Faith Estimate or a Truth in Lending Disclosure document three days after

Plaintiff submitted a loan application, as required by law under the Truth-in-Lending Act, 15

11

12

U.S.C. §1601, *et seq.*  In addition, Defendants Deutsche Bank and/or One West never provided

Plaintiff with an amended Good Faith Estimate as required by law if and when certain terms of

13

14

the disguised loan changed.

15

        3.21     In addition, Defendants Aurora, Deutsche Bank and/or One West did not

16

provide Mr. Bell with the properly completed Notice of Right to Cancel documents for both of

17

the loans, and as such, he may still rescind both loans.

18

                    **IV.  <u>PRAYER FOR RELIEF</u>**

19

        WHEREFORE, Plaintiff prays for relief as follows:

20

21

        1.       General damages in an amount to be determined at trial;

22

        2.       Treble damages for each and every violation of the Consumer Protection Act,

23

plus attorney fees and costs;

24

        3.       Damages, including emotional distress, by the conduct of the Defendants in an

25

amount to be fully proved at the time of trial;

26

        4.       Injunctive relief which may be available against the Defendants prohibiting

27

AMENDED COMPLAINT - 15

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115

them from engaging in these prohibited acts in the future;

5.      Statutory and/or punitive damages which may be available to Plaintiff for violations of TILA;

6.      The value of lost use of Plaintiff's monies, past and future, according to proof at time of trial;

7.      Rescission of the mortgage loan for violations of TILA for failure to provide the correct number of copies of the Notice of Right to Cancel; and

8.      For such other and further relief as the Court deems equitable and just.

Dated this 11th day of August, 2010.

LAW OFFICES OF MELISSA A. HUELSMAN, P.S.

/s/ Melissa A. Huelsman
Melissa A. Huelsman, WSBA #30935
Attorney for Plaintiff Steven J. Bell

AMENDED COMPLAINT - 16

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 1050
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 447-0103
FACSIMILE: (206) 447-0115